

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RICKY DUNCAN TAYLOR,

     Plaintiff,

v.                        Civil Action No. 3:11cv456

RIVERSIDE REGIONAL
JAIL AUTHORITY,

     Defendant.

### MEMORANDUM OPINION

This matter is before the Court on the MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED (Docket No. 4) filed by the Riverside Regional Jail Authority ("Riverside"). The motion seeks dismissal of the claims for injunctive relief (Complaint, ¶¶ 50, 51) sought by Ricky D. Taylor ("Taylor") on the ground that the claim is moot because Taylor has been released from confinement. For the reasons that follow, the motion will be granted.

The caption of the motion indicates that it is brought under Fed. R. Civ. P. 12(b)(6). However, the text cites Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction, as the procedural predicate for the relief sought. And, the cited authority pertains also to that rule. Hence, the motion will be addressed under Rule 12(b)(1).

**BACKGROUND**

On July 16, 2010, Taylor received a sentence of four days imprisonment with two days suspended for violating probation. Pl's Compl. ¶ 11.  Thereafter, Taylor reported to Riverside to serve his sentence, but Riverside informed him that he needed to return home because Riverside's computer system did not contain Taylor's name.  Id.  Riverside provided Taylor, a deaf individual, with a Telecommunications Device for the Deaf ("TDD") to call his mother and inform her of the confusion.  Id. ¶¶ 3, 11.  Taylor alleges that his mother did not have a TDD equipped telephone and thus he was unable to communicate with her.  Thus, says Taylor, he returned home on foot, a distance of some three miles.  Taylor alleges that Riverside should have provided him access to a Video Phone, the kind of telephone his mother used.

Subsequently, on July 30, 2010, Taylor reported to Riverside in a second attempt to serve his sentence.  Id. ¶ 15. However, Riverside's computer system again failed to identify Taylor as a reporting inmate.  Id.  Therefore, for the second time, Riverside ordered Taylor to return home and provided him with a TDD to communicate with his family.  Id.  Again, Taylor could not reach his mother because she did not have a TDD equipped phone.  And, again Taylor walked home.

2

Taylor then communicated with his attorney about the confusion at the jail. Id. ¶ 16. According to Taylor, the court informed the lawyer that Taylor should be sent a letter indicating the date on which he should report to Riverside to serve his sentence. Id. However, on August 31, 2010, the police arrested Taylor at his home for failing to report and transported him to Riverside where he remained incarcerated for the next eighteen days. Id. ¶¶ 17-18.

During Taylor's imprisonment, Riverside allegedly only allowed Taylor to use the TDD "around 11 p.m. on two or three occasions, effectively precluding him from contacting his attorney during business hours" as well as his family. Id. ¶ 19. Additionally, Riverside allegedly prohibited Taylor from using the library, claiming there were unsafe conditions for a deaf individual like Taylor. Id. ¶ 22. Furthermore, Taylor requested that Riverside provide him with a visual notification when shaves were offered to inmates, but Riverside allegedly failed to comply with Taylor's requests and continued to only use an intercom announcement to notify inmates of upcoming shaves. Id. Finally, although Riverside provided a television for inmates, Riverside allegedly refused to activate the closed captioning, effectively prohibiting Taylor from enjoying the television. Id. ¶ 23.

On September 17, 2010, eighteen days after initially entering Riverside, Taylor appeared in court. Id. ¶ 24. Following his attorney's explanation for the confusion surrounding Taylor's failure to report to Riverside, the court released Taylor from Riverside and dismissed the charge. Id.

Nearly a year after his release, Taylor filed this action against Riverside in which he asserts that Riverside wrongfully discriminated against him during his imprisonment in violation of the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act. Id. ¶¶ 5, 25-48. Taylor seeks monetary damages in the form of nominal and compensatory damages as well as the costs of litigation, including reasonable attorney's fees. Id. ¶¶ 52-53. Taylor also requests injunctive relief. Id. ¶¶ 50-51.

Riverside filed a Motion to Dismiss for Failure to State a Cause of Action Upon Which Relief Can Be Granted and a Memorandum of Law in Support of Motion to Dismiss. See Def.'s Mot. to Dismiss; Def.'s Mem. in Supp. Taylor filed a response with a supporting Declaration, and, thereafter, he filed the Corrected Declaration of Ricky Duncan Taylor. See Corrected Decl. of Ricky Duncan Taylor. Riverside has filed a reply along with the Affidavit of Walter Minton, the Assistant Superintendent of Riverside. Aff. of Minton, ¶ 1, Sept. 20, 2011.

4

1.   **Riverside's Position in the Motion to Dismiss**

Riverside's motion seeks dismissal only of Taylor's claim for injunctive relief which is found in paragraphs fifty and fifty-one of the complaint arguing, under Fed. R. Civ. P. 12(b)(1), that the Court lacks subject matter jurisdiction to enter an injunction.[1]   Specifically, Riverside contends that Taylor's release from Riverside in September 2010 moots his current claim for injunctive relief.   In support of its position, Riverside cites several Fourth Circuit decisions holding that a prisoner's transfer or release from "the offending prison" moots any claim for injunctive relief. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); Taylor v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986).   For additional support, Taylor also cites a Seventh Circuit decision, which similarly found that a prisoner's transfer from the facility mooted his claim for injunctive relief.   Def.'s Mem. at 3 (citing Moore v.

---

[1] Paragraphs 50 and 51 of Taylor's complaint request:

> 50.     The   Court   determine   adjudge   and   decree   that
> [Riverside],   by   the   policies,   practices,   and   conditions
> described above, violated and continues to violate Title II
> of the ADA and Section 504 of the Rehabilitation Act;
> 51.   The Court enter such relief against [Riverside] and in
> favor of [Taylor] as it deems appropriate to remedy past
> violations of the law and to prevent future violations of
> the   same.

Pl's Compl. ¶¶ 50-51.

*Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)). Riverside relies principally upon *Hill v. Hutto*, in which the Eastern District of Virginia concluded that a prisoner's transfer from the Richmond City Jail mooted his claim for injunctive relief because an injunction could not prevent "future personal injury (and it is only the future with which this suit for injunctive relief is concerned)." *Id.* at 3-5 (quoting 559 F. Supp. 390, 394 (E.D. Va. 1983)). Drawing parallels to the foregoing decisions, Riverside argues that injunctive relief fails to offer an adequate remedy for Taylor because his release from Riverside removed him from the allegedly discriminatory conditions. *See id.* at 4. Riverside further asserts that, because Taylor was released from Riverside almost an entire year before filing this lawsuit and currently resides in Maryland, Taylor will not likely endure this treatment at Riverside in the future. *Id.* at 3-4. Therefore, the case or controversy pertaining to the claim for injunctive relief ceased upon Taylor's release from Riverside. *Id.* at 4.

## 2. **Taylor's Response**

Assuming *arguendo* that the Court finds that release from Riverside usually moots a claim for injunctive relief, Taylor contends that this dispute falls within "the capable of repetition, yet evading review" exception to the doctrine of mootness. Pl's Mem. at 2-3 (quoting *Leonard v. Hammond*, 804 F.2d

6

838, 842 (4th Cir. 1986)).   Taylor argues that he satisfactorily meets the two-pronged test of this exception.

Under the first facet, Taylor asserts that his imprisonment was "too short in duration to be fully litigated prior to its cessation." Id. at 3-4.  (quoting Turner v. Rogers, No. 10-10, slip op. at 6 (U.S. June 20, 2011)).   On that theory, Taylor reasons that his eighteen-day imprisonment at Riverside was similarly sufficiently short to prohibit him from fully litigating his claims of discrimination. Id. at 3.

Taylor offers two reasons to call into play the exception's second requirement, which requires a reasonable expectation that Taylor will again face the same discrimination by Riverside. Id. at 4.   First, he argues that his continued presence in the Hopewell region to attend activities for the deaf community and to visit his mother creates the risk of future incarceration with the consequent result that he will face discriminatory treatment at Riverside, if incarcerated there. Id.[2]   Second, Taylor says that he might have friends who will be in jail and that an injunction is needed to assure that he can communicate with them when he visits them there.

---

[2] Taylor states he returns to Hopewell at least once a month. Id. at 4.

7

## 3.   Riverside's Reply

In its reply, Riverside reiterates its initial argument that Taylor's release from Riverside prevents him from suffering any further injury or benefitting from an order of injunctive relief, thereby rendering his claim for injunctive relief moot. Id. at 2-3.   Riverside also refutes Taylor's argument that this dispute falls within the "capable of repetition, yet evading review" exception.   Id. at 4 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)).   Riverside did not address whether Taylor's eighteen-day imprisonment satisfies the first facet of the exception and, instead, focuses on the second facet which requires Taylor to show a reasonable expectation that he will be subjected to the same discriminatory treatment.   Id.

## LEGAL STANDING

Riverside seeks dismissal of the injunctive relief claim pursuant to Fed. R. Civ. P. 12(b)(1).   When confronted with a motion to dismiss under Rule 12(b)(1), the plaintiff, as the party asserting the existence of jurisdiction, bears the burden of establishing federal jurisdiction.   McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 187 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); Walker v. U.S. Dep't of the Army, 60 F. Supp. 2d 553, 555 (E.D. Va. 1999).

8

A defendant may present its motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) in two ways. <u>Adams</u>, 697 F.2d at 1219; <u>Walker</u>, 60 F. Supp. 2d at 553. A 12(b)(1) motion to dismiss may assert that "the jurisdictional allegations of the complaint [are] not true." <u>Adams</u>, 697 F.2d at 1219. And, if the defendant challenges the factual basis for subject matter jurisdiction, the Court may examine evidence outside of the pleadings, even holding an evidentiary hearing. <u>Richmond, Fredericksburg & Potomac R.R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991); <u>Adams</u>, 697 F.2d at 1219. Alternatively, as here, a motion to dismiss pursuant to Rule 12(b)(1) may challenge the complaint on its face, contending that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." <u>Adams</u>, 697 F.2d at 1219. In a facial challenge, the Court assumes the truthfulness of the facts alleged in the complaint, thus providing the plaintiff with "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." <u>Id.</u> The Court must deny the motion to dismiss if the complaint contains facts sufficient to establish subject matter jurisdiction. <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009).

## DISCUSSION

### 1.   Mootness

Under the United States Constitution, the jurisdictional power of federal courts to adjudicate claims depends on the existence of a case or controversy. U.S. Const. art. III, § 2; DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006) ("The doctrine[] of mootness . . . originate[s] in Article III's 'case' or 'controversy' language, no less than standing does."); Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990) ("Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies."); Deakins v. Monaghan, 484 U.S. 193, 199 (1988) ("Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants."); Brooks v. Vassar, 462 F.3d 341, 348 (4th Cir. 2006) ("The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction."). A case or controversy exists if the litigant suffered an actual or imminent injury traceable to the defendant that is likely to "be redressed by [favorable] judicial decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Lewis, 494 U.S. at 477; Townes v. Jarvis, 577 F.3d 543, 546-47 (4th Cir. 2009).

The constitutional case or controversy requirement exists at all stages of a federal judicial proceeding. Arizonans for

Official English v. Arizona, 520 U.S. 43, 67 (1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'") (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)); Lewis, 494 U.S. at 477; United States v. Hardy, 545 F.3d 280, 283 (4th Cir. 2008). When a case or controversy ceases to exist because the issue is no longer live or a party "lack[s] a legally cognizable interest in the outcome[,]" preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue. Powell v. McCormack, 395 U.S. 486, 496 (1969); North Carolina v. Rice, 404 U.S. 244, 246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."); Incumma v. Ozmint, 507 F.3d 281, 289 (4th Cir. 2007) ("[T]he Constitution forbids us from pontificating about abstractions in the law or merely giving advice about the potential legal deficiencies of a law or policy when no ongoing controversy exists with respect to that law or policy.").

Under well-established Fourth Circuit precedent, the transfer or release of an inmate from the facility where he suffered the challenged conditions "moots his claims for injunctive and declaratory relief" pertaining to his

11

imprisonment.  <u>Incumma</u>, 507 F.3d at 286-87.  In <u>Incumma</u>, the
Court of Appeals held that "the supervening event of [a
prisoner's] release from the [unit]" mooted his claim for an
injunction prohibiting the enforcement of a publications ban.
And, in <u>Rendelman v. Rouse</u>, 569 F.3d 182, 186 (4th Cir. 2009),
the Court held that "[A]s a general rule, a prisoner's transfer
or release from a particular prison moots his claims for
injunctive and declaratory relief with respect to his
incarceration there."  In <u>Hardy</u>, 545 F.3d at 284, the Fourth
Circuit held that the plaintiff's release from prison "left [the
Fourth Circuit] without a 'case or controversy' to decide."  In
<u>Slade v. Hampton Rds. Reg'l Jail</u>, 407 F.3d 243, 248-49 (4th Cir.
2005), the Court held that the inmate's release from pretrial
detention mooted his claim for injunctive relief to prevent
unequal treatment.  In <u>Williams</u>, 952 F.2d at 823, the Fourth
Circuit remanded and instructed the district court to dismiss as
moot the prisoner's § 1983 claims for injunctive and declaratory
relief because he had been transferred to another facility.
These, and numerous other, decisions[3] leave no room for doubt
that this is the controlling rule in this circuit.

---

[3] <u>LaFaut v. Smith</u>, 834 F.2d 389, 394 (4th Cir. 1987) (upholding
the district court's finding that "injunctive relief [for
alleged violations of the Rehabilitation Act] was unavailable
because [the inmate] already had been released from federal
prison"); <u>Magee</u>, 810 F.2d at 452-53 (holding a prisoner's claim
for injunctive relief to improve the conditions of the jail

The reason for the rule is that the release or transfer of an inmate removes him from "the environment in which he is subjected to the challenged policy or practice," thereby freeing him "of the policy or practice that provoked his lawsuit in the first place." Incumma, 507 F.3d at 287. No longer suffering an injury, the plaintiff thus ceases to possess "a legally cognizable interest in a judicial decision on the merits of his claim." Id. And, when the plaintiff lacks a legally cognizable interest, his claim is moot because an order granting injunctive relief in the plaintiff's favor cannot practically affect his rights or redress any injury already suffered. Id.; see also Hewitt v. Helms, 482 U.S. 755, 761 (1987) (The real value of the judicial pronouncement—what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff.); LaFaut, 834 F.2d at 395 (determining that the plaintiff who was already released from prison "may have derived some satisfaction from

---

became moot upon his transfer to another facility); Taylor, 781 F.2d at 1048 n.1 (finding the prisoner's release from protective custody to general prison population mooted his claims for declaratory and injunctive relief); Inmates v. Owens, 561 F.2d 560, 562 (4th Cir. 1977) (holding the release of inmates from prison during the pendency of the appeal mooted their claims for injunctive relief relating to the conditions of their confinement); Hill, 559 F. Supp. at 393 (concluding that a prisoner's transfer from the Richmond City Jail mooted his claim for injunctive relief to eliminate inequalities for prisoners awaiting transfer from the city jail to the state system).

the entry of the declaratory judgment . . . would be irrelevant to the mootness issue"). In Hill, 559 F. Supp. at 393, the district court found a lack of jurisdiction because the plaintiff prisoner could "present this court with no future personal injury (and it is only the future with which this suit for injunctive relief is concerned) from which this lawsuit could protect him." See also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.") (emphasis added).[4]

These decisions establish that Taylor's release from Riverside has mooted his claim for injunctive relief. No case or controversy exists because Taylor does not have a legally cognizable interest in the conditions at Riverside. See Powell,

---

[4] The Fourth Circuit's rule comports with precedent in other circuits. E.g., Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (finding an inmate's transfer from prison mooted his claims for injunctive and declaratory relief to improve prison conditions); Scott v. District of Columbia, 139 F.3d 940, 941 (D.C. Cir. 1998) ("Normally, a prisoner's transfer or release from a prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison."); Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3d Cir. 1993) (vacating the injunctive relief granted by the district court in favor of an inmate who was released from prison five months prior to the trial because "the district court could not provide [the inmate] with meaningful relief by entering an injunctive order respecting the [unit] in which [he] no longer was incarcerated"); Young v. Lane, 922 F.2d 370, 373 (7th Cir. 1991) (vacating as moot the plaintiffs' claims for injunctive relief based upon their transfer to another prison).

395 U.S. at 496 ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

Simply put, Taylor fails to satisfy Article III's redressability requirement. Undisputedly, Taylor is no longer incarcerated at Riverside, which allegedly failed to provide proper accommodations for deaf individuals by denying him access to a video telephone, a television with closed captioning, the library, and regular shaves.  The release from custody freed Taylor from the conditions that triggered the filing of the lawsuit.[5]  While an order enjoining Riverside to adequately accommodate deaf prisoners by installing video telephones or providing visual notice of upcoming shaves might benefit other deaf inmates, Taylor is the only plaintiff, and he would not reap the benefits of the injunction as he is no longer incarcerated at Riverside.  Accordingly, Taylor has not established that a favorable decision by the Court granting injunctive relief would affect Taylor's access to video phones, televisions with closed captioning, regular shaves, and the library at Riverside.  See Incumma, 507 F.3d at 287 (The prisoner "would no more benefit from our declaring that the publications ban was unconstitutional as it applied . . . to him

---

[5] In fact, Taylor was released from Riverside ten months before he filed the complaint.

and enjoining its enforcement than he would benefit from our declaring any other aspect of MUS policy . . . unconstitutional and enjoining its enforcement."). Moreover, an injunctive order would not remedy the injuries Taylor allegedly suffered during his eighteen-day incarceration. Thus, an injunction to improve the accommodations for the deaf at Riverside would offer no practical benefits to Taylor and would not remedy any past injury.

## 2.    The "Capable of Repetition, Yet Evading Review" Exception

Taylor argues that, if his release from Riverside moots his claim for injunctive relief, the Court should find that his case fits within the "capable of repetition, yet evading review" exception to mootness. Sosna v. Iowa, 419 U.S. 393, 400 (1975); Moore v. Ogilvie, 394 U.S. 814, 816 (1969); S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911); Brooks, 462 F.3d at 348 ("A case is not moot, and the exercise of federal jurisdiction may be appropriate, however, if a party can demonstrate that the apparent absence of a live dispute is merely a temporary abeyance of a harm that is 'capable of repetition, yet evading review.'"). Under the "capable of repetition, yet evading review" exception, a federal court properly exercises jurisdiction to adjudicate an otherwise moot claim if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there

16

[is] a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975); see also Turner, No. 10-10, slip op. at 6.

To satisfy this exception to mootness, both elements must be present, and Taylor carries the burden of proving that the exception applies. FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990) ("It is the burden of the 'party who seeks the exercise of jurisdiction in his favor' [to] 'clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'") (citations omitted); Incumma, 507 F.3d at 289; Brooks, 462 F.3d at 348. For the following reasons, Taylor has failed to demonstrate that this "exceptional situation[]" applies in the present case. Lyons, 461 U.S. at 109.

## A. The Challenged Action Was in Its Duration Too Short to Be Fully Litigated Prior to Its Cessation

While no brightline rule exists, courts have repeatedly found that a "challenged action" lasting twelve months or less too short in duration to be fully litigated before the challenged condition fails to exist. Compare Turner, No. 10-10, slip op. at 6 (holding that a prison sentence of twelve months was "too short to be fully litigated"), First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 774 (1978) (concluding that

17

eighteen months was too short of a time frame "to obtain complete judicial review"), S. Pac. Terminal Co., 219 U.S. at 514-16 (holding that a two year period was too short to permit judicial review), Slade, 407 F.3d at 249 (resolving the first element in the prisoner's favor because "'[p]retrial detention is by nature temporary'") (quoting Gerstein v. Pugh, 420 U.S. 103, 111 n.11 (1975)), and Withers v. Levine, 615 F.2d 158, 161 (4th Cir. 1980) (finding that a prisoner's housing on a tier for sixty to ninety days "does not provide sufficient time to litigate the adequacy of measures to provide such prisoners . . . with reasonable protection [from sexual assault]"), with Spencer v. Kemna, 523 U.S. 1, 17 (1998) ("[Petitioner] has not shown (and we doubt that he could) that the time between parole revocation and expiration of sentence is always so short as too evade review."), and Rendelman, 569 F.3d at 187 (finding that a fifteen-year prison sentence provided "sufficient opportunity to reinitiate an action seeking injunctive relief."). These decisions teach that Taylor's eighteen-day imprisonment at Riverside is capable of evading review. Riverside does not argue otherwise.

### B. There Is Not a Reasonable Expectation that Taylor Would Be Subjected to the Same Action Again

Under the second component of the exception that Taylor invokes, he must show that the circumstances which comprise the

18

predicate for his claim are "capable of repetition." To do so, he must show that there is a "reasonable expectation" or "demonstrated probability" that the challenged action will occur again involving the same complaining party. Murphy v. Hunt, 455 U.S. 478, 483 (1982); see also Spencer, 523 U.S. at 14 (finding that petitioner's claim that a parole revocation could be adversely used against him in the future moot because "it is . . . still a possibility rather than a certainty or even a probability"); Weinstein, 423 U.S. at 149 (holding that the prisoner failed to satisfy this second element because "there [was] no demonstrated probability that [the prisoner] will again" face the challenged action); Incumaa, 507 F.3d at 289 (concluding that no reasonable likelihood of repetition existed when the reoccurrence of the challenged activity depended on a prisoner's ability to follow prison rules, since "such 'conjecture as to the likelihood of repetition has no place in the application of this exception and narrow grant of judicial power' to hear cases for which there is in fact a reasonable expectation of repetition") (quoting Abdul-Akbar, 4 F.3d at 207); Brooks, 462 F.3d at 348 (concluding that the exception applies "[o]nly if reenactment is not merely possible but appears probable"); Slade, 407 F.3d at 249 (finding the claim for injunctive relief moot, since the court assumed the petitioner would obey the laws and, therefore, did not face a

19

reasonable probability of returning to jail).  But see Turner, No. 10-10, slip op. at 6-7 (finding the petitioner "likely to suffer future imprisonment" because he frequently received jail sentences for contempt of court).

Courts often find that no reasonable expectation exists when the plaintiff must engage in illegal behavior in order to be subjected to the challenged action again.  Spencer, 523 U.S. at 15 (rejecting the petitioner's argument that revocation of his parole created the probability of increasing future prison sentences "because it was contingent upon respondent's violating the law, getting caught, and being convicted"); Lyons, 461 U.S. at 103 (finding past wrongs insufficient to create a real and immediate threat or injury necessary to avoid mootness); Lane v. Williams, 455 U.S. 624, 633 n.13 (1982) ("Respondents themselves are able—and indeed required by law—to prevent [future violations of state law] from occurring."); O'Shea v. Littleton, 414 U.S. 488, 497 (1974) (declining to issue an injunction against enforcement of criminal laws because the Supreme Court of the United States assumed the "[plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners"); Incumma, 507 F.3d at 289 (holding that no reasonable likelihood of repetition existed because the Fourth Circuit would not "forecast bad

20

behavior" by the inmate); Slade, 407 F.3d at 249 ("Because we presume that [the petitioner] will abide by the criminal laws of Virginia in the future, we do not believe there is a reasonable probability that he will return to the Jail as a pretrial detainee. Accordingly, [petitioner's] claim for injunctive relief is moot.").

Taylor's argument that he faces a reasonable expectation of enduring the same discrimination at Riverside is twofold. First, Taylor asserts that his future presence in Hopewell, Virginia from time to time presents the likelihood that he will be reincarcerated at Riverside. Second, even if Taylor is not actually imprisoned at Riverside again, he contends that he still faces the reasonable likelihood of suffering discrimination by Riverside because its lack of video phones and limited access to a TDD prevents Taylor from communicating with deaf friends incarcerated at Riverside.

Neither position has merit: As to Taylor's first argument, his future presence in Hopewell from time to time creates only raw speculation that he will be incarcerated again at Riverside. See Murphy, 455 U.S. at 482 ("The Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the test . . . ."). The possibility that Taylor may be reincarcerated at Riverside is too speculative to find a justiciable claim for injunctive relief. Essentially, Taylor

21

argues that his presence in Hopewell attending functions for the deaf and maintaining his mother's home amounts to a reasonable likelihood that the police will arrest Taylor, and the court will subsequently find him guilty and sentence him to imprisonment at Riverside.[6]  However, Taylor only faces the risk of arrest and incarceration at Riverside if he again violates the law.  Taylor thus "holds the keys" to remain free from the conditions at Riverside because he controls whether or not he will engage in illegal behavior and, consequently, risk arrest and incarceration.  Incumma, 507 F.3d at 289.

To find the "capable of repetition, yet evading review" exception applies, the Court must erroneously assume that Taylor will engage in illegal behavior.  To the contrary, the Court presumes that Taylor will abide by the law in the future.  See O'Shea, 414 U.S. at 497 ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction."); Incumma, 507 F.3d at 289 ("[W]e presume [the prisoner] will abide by [prison] policies."); Slade, 407 F.3d at 249 (concluding that the court presumes individuals will obey

---

[6] Taylor admits that he must be arrested and incarcerated again at Riverside in order to face the same conditions.  See Pl's Mem. at 5 ("Although [Taylor] is not the subject of ongoing proceedings, his continued presence in the Hopewell area means, that if re-arrested here, he will again be at Riverside. . . . [T]he frequency with which he is present in the Hopewell area and engaging in activities makes it reasonably likely that he could be arrested in the Hopewell area and re-incarcerated at Riverside.").

laws when deciding the issue of mootness). It is, therefore, charitable to reject Taylor's argument on this point as lacking in merit. Indeed, it is nigh onto frivolous.

Taylor's alternative argument that, even if not incarcerated in Riverside, he faces a reasonable likelihood of discrimination by Riverside, also fails. Taylor does not face a "reasonable expectation" of being subjected to such discrimination. All of the individuals with whom Taylor claims he needs to communicate with were never incarcerated at Riverside or have been released from Riverside for over a year. Taylor will only be unable to communicate with his friends if they are incarcerated at Riverside in the future. Therefore, as is true for Taylor himself, the Court must assume that Taylor's friends, now released from Riverside, will also obey the law and remain free from imprisonment. Thus, Taylor has failed to establish a "demonstrated probability" that he will face discrimination by Riverside even if he is not incarcerated there.[7]

---

[7] Taylor's argument that "a facility's failure to accommodate communications by those outside of a facility with those who are incarcerated at a facility violates the [ADA]" appears irrelevant to the issue of mootness. Pl's Mem. at 6. Furthermore, Taylor's reliance on Niece v. Fitzner offers no guidance because Niece only determined whether the defendants violated the ADA, not whether the plaintiffs' claims were moot. See 922 F. Supp. 1208, 1214-15 (E.D. Mich. 1996).

### CONCLUSION

For the foregoing reasons, the MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED (Docket No. 4) will be granted and Taylor's claims (in paragraphs 50 and 51 of the Complaint will be dismissed for lack of subject matter jurisdiction as moot.

It is so ORDERED.

                         /s/          _REP_

                    Robert E. Payne
                    Senior United States District Judge


Richmond, Virginia
Date:  December  _1_, 2011